**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 1:18-cv-20723 – Williams/Torres**

| | |
|---|---|
| **LESLIE P. CUTLER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **VOYA FINANCIAL, INC.** | ) |
| **and** | ) |
| **RELIASTAR LIFE INSURANCE** | ) |
| **COMPANY,** | ) |
| | ) |
| **Defendants.** | ) |

## AMENDED AND RESTATED COMPLAINT

COMES NOW, Plaintiff, Leslie ("Les") P. Cutler, by and through his attorneys, and files this Amended and Restated Complaint against Defendants VOYA Financial, Inc. ("VOYA") and ReliaStar Life Insurance Company ("ReliaStar"). In support thereof, the Plaintiff states as follows:

## NATURE OF THE CASE

1. This is an action for breach of contract and fraud to recover amounts that Defendants have charged and/or collected from Plaintiff in excess of the amount authorized by the express terms of his Flexible Premium Adjustable Life Insurance Policy (hereinafter the "Policy") and to recover for the loss of his Policy.

2. The terms of Plaintiff's life insurance policy provide for a "Cash Value" consisting of monies held in trust by Defendant ReliaStar for Plaintiff. Over the course of several years, Defendant ReliaStar systematically deducted monies from Plaintiff's Cash Value in breach of the Policy's terms.

1

3. Defendant ReliaStar is contractually bound to deduct only those charges that are explicitly identified and authorized by the terms of the Policy. Despite unambiguous language in a fully integrated agreement, Defendant ReliaStar deducted charges from the Cash Value of Plaintiff's Policy in excess of amounts specifically permitted by the Policy.

4. Defendant ReliaStar fraudulently induced Plaintiff to pay additional premiums and excess premiums on the Policy to his detriment by suppressing the Policy's underlying financial performance and the hidden factors used to inflate the monthly cost of insurance ("COI") rate that was deducted from Plaintiff's Cash Value each month. Likewise, Defendant VOYA, through its servicing of the Policy, maintained an active and direct line of communication with Plaintiff and regularly communicated with him about the Policy. While doing so, Defendant VOYA fraudulently suppressed the fact that impermissible amounts were being deducted. Had Plaintiff known the truth, he would have sought alternative options for his life insurance needs rather than to pay additional premiums and excess premiums on the Policy to keep it in force for additional years. Because of his increased age and declining health, Plaintiff can no longer obtain comparable replacement insurance.

5. Defendants have caused material harm to Plaintiff by improperly draining monies he had accumulated in the Cash Value of his Policy, and ultimately, causing Plaintiff's Policy to lapse.

## JURISDICTION & VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a) because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are subject to the personal jurisdiction of this Court and a substantial portion of the conduct of the Defendants which forms the basis of this action occurred in Miami, Florida.

## PARTIES

8.      Plaintiff, Les Cutler, is a citizen and current resident of Miami, Florida.

9.      Defendant VOYA Financial, Inc. is a Delaware incorporated corporation, with its principal place of business in New York, and conducts business in Florida. VOYA is the parent company of Defendant ReliaStar. *See* Life Insurance Illustration, attached as Exhibit A, at p. 6 (describing ReliaStar as being a "member of the VOYA® family of companies"). Plaintiff's agent/representative was identified by Defendant ReliaStar and/or Defendant VOYA as the VOYA Service Center. *See* Ex. A at p. 6.

10.     Defendant ReliaStar Life Insurance Company is a Minnesota incorporated corporation and conducts business in Florida. ReliaStar was acquired in 2000 by VOYA and/or its predecessor, ING America Insurance Holdings, Inc., and is currently owned and controlled by VOYA.

11.     ReliaStar and/or VOYA are successors-in-interest to Security-Connecticut Life Insurance Company, which issued Plaintiff's policy. On October 1, 2003, Security-Connecticut Life Insurance Company and ReliaStar Life Insurance Company merged, with ReliaStar being the surviving company.

## FACTUAL ALLEGATIONS

12.     Plaintiff purchased a Flexible Premium Adjustable Life Insurance Policy from Security-Connecticut Life Insurance Company on December 28, 1983, bearing the policy number

▆881X, with a face amount of $150,000 (excluding cash value).  A true and accurate copy of the Policy is attached hereto as Exhibit B, and incorporated herein by reference.

13. Plaintiff is listed as the "Insured" under the policy.

14. Plaintiff was 30 years old when he purchased the policy and fell within the premium rate class standard non-smoker.

15. Plaintiff's planned periodic premiums were $300 to be paid quarterly, which was set on the policy date of December 28, 1983.

16. Defendant ReliaStar was the effective and liable insurer of the Policy, and Defendant VOYA, through its "VOYA Customer Center" and/or "VOYA Service Center" and by acting in concert with Defendant ReliaStar, also serviced and administered the Policy. In its role, VOYA assumed responsibility for communicating directly with Plaintiff about all material information concerning the Policy.

17. The Policy is a valid and enforceable contract between Plaintiff and Defendant ReliaStar.

18. The Policy and attached application "make[] up the whole contract."  *See* Ex. B.

19. The terms of the Policy are not subject to individual negotiation, cannot be altered by an agent's representations at the time of sale, and can only be changed by an officer.  *See* Ex. B ("Any change or waiver of the provisions of this Policy must be in writing and signed by the President, a Vice President, the Secretary or an Assistant Secretary of the Company.").

20. Unlike standard term life insurance policies, the Policy provides Plaintiff an investment, savings, or interest-bearing component (identified in the Policy as the "Cash Value"), in addition to a death benefit.

21. Generally speaking, premium dollars are deposited into the Cash Value, from which the insurer deducts those monthly charges authorized by policy terms. Under the terms of the Policy, the Cash Value consists of an interest-bearing account that accumulates over time.

22. The funds held in the Cash Value of the Policy are policy owner property that Defendant ReliaStar holds in trust for policy owners, such as Plaintiff.

23. Under the convoluted terms of the Policy, the Cash Value is determined as follows:

> On each Monthly Policy Day the cash value shall be calculated as (a), plus (b), minus (c), plus (d), where:
> (a) is the cash value on the preceding Monthly Policy Day.
> (b) is all net premiums received since the preceding Monthly Policy Day.
> (c) is the monthly deduction for the month preceding the Monthly Policy Day.
> (d) is one month's interest on the result of item (a) less item (h), described below.
>
> On any day other than a Monthly Policy Day, the cash value shall be calculated as (e), plus (f), minus (g), where:
> (e) is the cash value as of the preceding Monthly Policy Day.
> (f) is all net premiums received since the preceding Monthly Policy Day.
> (g) is the monthly deduction for the month following the preceding Monthly Policy Day.
>
> The cash value on the Policy Date shall be the First Net Premium, less the Additional First Year Expense Charge shown on the Policy Data page.

*See* Ex. B.

24. The Policy authorizes Defendant ReliaStar to take a "Monthly Deduction" from Plaintiff's Cash Value each month, which is the subtracted amount in the definition of Cash Value. That "Monthly Deduction" is defined as follows:

> **Monthly Deduction:** The monthly deduction shall be calculated as (h), plus (i), where:
> (h) is the cost of insurance plus the cost of additional benefits provided by rider. The cost of insurance is described below.
> (i) is the additional first year exchange charge shown on the Policy Data page.

25. Under the Policy, Security-Connecticut Life Insurance Company (now ReliaStar) reserved the right, subject to the terms of the Policy, to adjust the monthly cost of insurance. No policyholder can independently calculate the monthly deduction on his or her policy—meaning they cannot verify that the COI rate charged is accurate or identify upon which factors the rate is actually calculated —because ReliaStar did not disclose the equation used. In fact, the only insight a policyholder has into the manner in which COI is determined is the following tortuous policy language:

> **COST OF INSURANCE:** The cost of insurance is determined on a monthly basis, and is determined separately for each Specified Amount.
>
> The cost of insurance for the Insured is calculated as (a), multiplied by the result of (b) minus (c), where:
> (a) is the cost of insurance rate as described in the Cost of Insurance Rates section.
> (b) is the Insured's Death Benefit at the beginning of the Policy Month divided by 1.0036748.
> (c) is the cash value at the beginning of the Policy Month.
>
> If the cash value is included in the Specified Amount and there have been increases in the Death Benefit, then the cash value shall be first considered a part of the initial Specified Amount. If the cash value exceeds the initial Specified Amount, it shall then be considered a part of additional Specified Amounts resulting from increases in the order of the increases.

*See* Ex. B.

26. The Policy explicitly discloses the specific factors Defendant ReliaStar is allowed to use to determine the monthly COI rates, which are used to calculate the COI charge that is deducted from the Cash Value each month. Under the explicit terms of the Policy, Defendant ReliaStar is authorized to use only the insured's sex, attained age, rating class and its "expected future mortality experience" when determining the COI rates used to calculate the cost of insurance:

>   **COST OF INSURANCE RATES:** The monthly cost of insurance rate is based on the insured person's sex, attained age, and rating class. Attained age means age nearest birthday on the prior Policy Anniversary. Monthly cost of insurance rates will be determined by us from time to time. These rates will be based on our expected future mortality experience. The cost of insurance rates, however, will not be greater than those shown in the Table of Guaranteed Maximum Insurance Rates for Monthly Cost of Insurance for standard Insurance Class. For substandard or rated class, the appropriate adjustment will be made to the Table of Guaranteed Maximum Insurance Rates for Monthly Cost of Insurance.
>
>   The Guaranteed Cost of Insurance Rates are based on the 1958 CSO Mortality Table, Age Nearest Birthday.

*See* Ex. B.

27.  Defendant ReliaStar may access and withdraw funds from the Cash Value only as expressly authorized by the Policy.

28.  The Policy states that the additional first year expense charge is "80% of the first year premium up to a maximum charge of $5.82 per $1000 of initial specified amount." *See* Ex. B.

29.  In addition, a premium expense charge of "10% of all premiums" is deducted from the Net Premium, defined as "the premium paid, less the percentage of premium expense charge . . . ." *See* Ex. B. This is factored into the calculation for Cash Value.

30.  Even the most capable policyholder, reading their policy with excruciating care, cannot determine what their COI charges should be at any given period. Instead, they must fully rely on Defendant ReliaStar to accurately calculate the COI for their policy and on Defendants to alert them to any adverse conditions that would negatively affect their expectations for the policy.

31.  As shown by the "Cost of Insurance Rates" definition, the Policy expressly defines the specific charges that may be assessed and deducted from Plaintiff's premium payments and the accumulated Cash Value. Defendant ReliaStar may deduct only those charges allowed by the Policy.

32. Under the explicit terms of the Policy, therefore, Defendant ReliaStar is authorized to use only the Insured's "sex, attained age, and rating class." *See* Ex. B.

33. Age, sex, and rate class are factors commonly used within the life insurance industry to determine the mortality expectations of an insured or group or class of insureds.

34. An insured would reasonably read "sex, attained age, and rating class," in combination with the disclosure that rates will be adjusted "based on [Defendants'] expected future mortality experience," and understand that only mortality expectations are used to determine monthly COI rates. *See* Ex. B.

35. By specifically identifying age, sex, and rate class as the defining components of the monthly COI rate, the parties to the Policy agreed that mortality expectations are what determines the monthly COI rates under the Policy, and this fact is further confirmed where the Policy states that such rates will be "based on our expected future mortality experience." *See* Ex. B.

36. Because the Policy expressly states that monthly COI rates are based on ReliaStar's expectations as to future mortality experience, the parties agreed that ReliaStar's mortality expectations are what determine the Policy's COI rates.

37. Although the Policy authorizes Defendant ReliaStar to use only certain, specified factors in determining monthly COI rates, Defendant ReliaStar used other factors, not authorized by the Policy, when determining those rates, including, without limitation:

    a. Recoupment of past losses;

    b. Expense experience;

    c. Persistency;

    d. Taxes;

  e. Profit assumptions;

  f. Investment Earnings;

  g. Capital and reserve requirements; and

  h. Other unspecified factors.

38. By including these other factors in the monthly COI rates, Defendant ReliaStar knowingly causes those rates to be higher than what is explicitly authorized by the Policy and, as a result, withdrew COI charges from the Cash Value in amounts greater than those authorized by the Policy.

39. By loading monthly COI rates with unauthorized factors, Defendant ReliaStar repeatedly breached the Policy and impermissibly inflated those rates.

40. As a direct and proximate result of each breach committed by Defendant ReliaStar, Plaintiff was damaged by reductions to his Cash Value in amounts not authorized by the Policy.

41. By inflating monthly COI rates with undisclosed factors, including without limitation, maintenance, administrative, and other expense factors, Defendant ReliaStar also impermissibly deducted additional expense charges from the Cash Values of Plaintiff in amounts in excess of the fixed expense charge expressly authorized by Plaintiff's Policy.

42. As a direct and proximate result of each breach committed by Defendant ReliaStar, Plaintiff has been damaged in that Defendant ReliaStar has deducted expenses, including without limitation, maintenance, administrative, and other expenses, from the Cash Value of Plaintiff in amounts not authorized by the Policy.

43. Plaintiff did not learn that Defendant ReliaStar was breaching the Policy because the facts showing breach were not reasonably discoverable by Plaintiff nor was the harm that was caused by Defendant ReliaStar's breaches.

44. The nature of Defendants' conduct is such that Plaintiff was unaware that Defendants were engaging in wrongdoing by taking inflated charges and improper amounts from his Cash Value. Defendants possess the actuarial information and equations underlying the computation of rates and charges for the Policy. The monthly COI rates actually used to calculate the monthly COI charges are not disclosed to policy owners, nor are the components or factors that comprise those rates.  Even if they were, Plaintiff lacks the knowledge, experience, and training to reasonably ascertain how Defendants calculated the rates and charges.

45. Defendants were aware that Plaintiff did not know about the improper deductions because of Defendants' superior knowledge of the aforementioned computations.  Defendants sent Plaintiff annual statements that identified each month's monthly deductions using the terms "Policy and Administrative Charges" and "Cost of Insurance Charges" while affirmatively concealing the use of impermissible factors not included in the definition of those terms that were used to inflate the COI rates and charges.  Despite reasonable diligence on Plaintiff's part, Defendants' intentional and deceptive conduct kept Plaintiff ignorant of the factual bases for these claims for relief and induced Plaintiff not to commence suit.

46. Defendants were aware of their non-disclosure because of their superior knowledge of the aforementioned computations. Concealment of their conduct and failure to disclose their conduct to Plaintiff constitutes fraudulent concealment and therefore tolls the statute of limitations for Plaintiff.  Plaintiff did not learn of Defendant ReliaStar's breaches of the Policy or of Defendants' fraudulent suppression until approximately May 31, 2016, when he was notified that his Policy was in danger of lapsing and thereafter, engaged counsel.  Plaintiff was not at fault for failing to discover the breaches and had no actual or presumptive knowledge of the breaches.

47. In a letter dated May 31, 2016, Plaintiff was notified that his Policy was in danger of lapsing because it did not have "sufficient cash value and premiums" to keep it in force. Plaintiff was required to pay an additional $501.68 to maintain the Policy. According to the letter if Plaintiff did not make this additional payment, his Policy would lapse on August 2, 2016. A copy of this letter is attached hereto as Exhibit C.

48. Before May 31, 2016, Plaintiff had never been notified that his Policy was at risk of lapsing due to Defendant ReliaStar's wrongful depletion of his Cash Value nor was Plaintiff otherwise aware of the urgent risk created by ReliaStar. In fact, Plaintiff's Policy lists a maturity date of December 28, 2048. *See* Ex. B. The Defendants also suppressed from the Plaintiff the fact they were wrongfully diminishing the Cash Value of the Policy in order to pay it to themselves for illegitimate purposes, including to prop up their own balance sheets at the expense of the policyholders, or by not crediting interest to the Policy and instead retaining for themselves the interest earned on the related and underlying investments. The Defendants' concerted and fraudulent efforts began after their acquisition of Security-Connecticut Life and was carried out in each of the subsequent years. In each year since, the Defendants sent the incomplete and deceptive annual statements discussed above and also billed the Plaintiff for premiums and excess premiums to keep the Policy in force and to fund the Cash Value for the future. The Defendants' fraudulent concealment and suppression of these facts fraudulently induced the Plaintiff to make the premium and excess premium payments to keep the Policy in force while the Defendants carried out their fraudulent scheme to enrich themselves at the expense of the Plaintiff.

49. In addition to being required to pay $501.68 by August 2, 2016, Plaintiff was notified on or around June 2016 that his premiums would be increasing from $300/quarter to approximately $2,125.34/quarter, or from $100/month to $708.45/month.

50. Prior to May/June 2016, Plaintiff was never notified that he would be expected or required to pay more than $300 per quarter in order to maintain his life insurance policy. In other words, Plaintiff had maintained the Policy at the planned periodic premium rate for almost 33 years.

51. Prior to May/June 2016, Plaintiff believed that the Policy was in sound financial condition and had no reason to suspect that, after three decades of making the same premium payment, his Policy was in danger of lapsing due to Defendant ReliaStar's misallocation of funds and the Defendants' fraudulent scheme designed to enrich themselves at the Plaintiff's expense. Neither Defendant ReliaStar nor VOYA, in its capacity as the agent/representative for the Policy, alerted Plaintiff that anything was awry until Plaintiff received the May 31, 2016 letter informing him that he would be required to fund the Policy now with a premium seven times greater than the premium planned for maintaining the Policy until its maturity date. As mentioned above, for years, Plaintiff received Annual Policy Statements and premium notices that failed to inform him that his Policy was at risk of lapsing or that his premiums would substantially increase. Moreover, Defendant ReliaStar did not disclose all of the factors used to calculate the COI rate nor did it disclose the underlying financial performance of the Policy to Plaintiff.

52. Because of this astronomical premium increase (of over seven times what it had been) and the related improper increases to the COI and monthly deductions, as well as the unexpected $501.68 additional required payment, Plaintiff's Policy lapsed.

53. Had Plaintiff known the truth and not been deceived by Defendants' fraudulent suppression, he would have sought alternative life insurance rather than pay premiums to Defendant ReliaStar for a Policy that he could not maintain for the duration of his life, or until

maturity. Because of Plaintiff's increased age and declining health, he cannot obtain comparable life insurance.

54. Plaintiff's payments for these improper increases were procured through intentional fraud and were not contemplated under the terms of Plaintiff's flexible premium adjustable life insurance policy.

## COUNT I: BREACH OF CONTRACT
### (Against Defendant ReliaStar)

55. Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

56. Plaintiff entered into a contract with Security-Connecticut Life Insurance Company (now ReliaStar) when he purchased his life insurance policy.

57. Plaintiff's Policy is a valid and enforceable contract between Plaintiff and Defendant ReliaStar.

58. Plaintiff substantially performed his obligations under the terms of the Policy.

59. Under Plaintiff's Policy, Defendant ReliaStar owed duties and obligations to Plaintiff. Among these duties was the duty to properly administer the Policy consistent with the terms and obligations set forth within it. This included the duty to determine each month the correct monthly deduction from Plaintiff's account, the duty to notify Plaintiff in a timely manner whenever Defendant ReliaStar believed the Policy's COI expenses increased, and to refrain from increasing the COI except under very specific conditions defined by the Policy.

60. Defendant ReliaStar materially breached the terms of the Policy and its duties to Plaintiff under the Policy each time it:

    a. instituted unreasonable COI increases for purposes not authorized under the Policy;

      b.      failed to determine the correct monthly deduction from the Policy's accounts in accordance with the Policy's terms and conditions;

      c.      failed to notify Plaintiff as soon as Defendant ReliaStar determined that its "expectations" for the Policy were inaccurate and that the Policy was not performing sufficiently and required an increase in COI;

      d.      failed to determine in a reasonable and timely manner that the Policy was not charged the appropriate COI;

      e.      failed to maintain adequate assets backings reserves sufficient to make good on its obligations under the Policy; and

      f.      failed to administer and/or maintain the Policy consistent with Defendant ReliaStar's inherent duties of good faith and fair dealing implied in the performance of every contract.

61. As a direct and proximate result of Defendant ReliaStar's conduct, Plaintiff has been damaged in an amount to be determined at trial.

### COUNT II: FRAUD (SUPPRESSION)
**(Against Defendants ReliaStar & VOYA)**

62. Plaintiff incorporates and restates by reference paragraphs 1 through 61 as though fully set forth herein.

63. Defendant ReliaStar and Defendant VOYA suppressed the truth and failed to disclose pertinent and material facts, including but not limited to the Policy's underlying financial performance and all the factors used to calculate the monthly COI rate, which was leading to underperformance of the Policy's Cash Value. Defendant ReliaStar and Defendant VOYA also suppressed from the Plaintiff the fact they were wrongfully diminishing the Cash Value of the Policy in order to pay it to themselves for illegitimate purposes, including to prop up their own

14

balance sheets at the expense of the policyholders, or by not crediting interest to the Policy and instead retaining for themselves the interest earned on the related and underlying investments.

64. In servicing the Policy, Defendant VOYA failed to disclose in Annual Policy Statements, premium notices, and other correspondence with Plaintiff that the Policy was in danger of lapsing or required increased premiums until, at the earliest, May 2016 when an additional payment was required, and June 2016 when the premiums had increased seven-fold. At this point, the Policy was unaffordable, and Plaintiff could not maintain it as he had in the years past.

65. Plaintiff did not know the truth and did not have the material facts necessary to make an informed decision regarding his Policy. Plaintiff continued to pay the same planned and scheduled premium as identified in his Policy of $300/quarter for almost 33 years and kept his Policy in force.

66. Had Defendant ReliaStar kept Plaintiff apprised of the underlying performance of the Policy, and been transparent about all the factors used to calculate the monthly COI rate, and had Defendant VOYA disclosed that his premiums would increase substantially as a result, Plaintiff would not have acted to his detriment by paying additional premiums and by foregoing other available options for long term life insurance coverage. Due to his increased age and declining health, Plaintiff cannot obtain comparable replacement insurance.

67. Defendants knowingly induced Plaintiff to continue making premium payments and to maintain his Policy to his detriment.

68. Defendants' aforementioned suppression was intentional, and if not intentional, Defendants recklessly suppressed the truth.

69. Defendants intended to cause damage to Plaintiff by fraudulently suppressing material facts from him. Defendants' conduct was therefore malicious and Defendants are also

guilty of oppression in that their systematic acts of fraud subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights.  Plaintiff is therefore entitled to punitive or exemplary damages.  As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows: compensatory damages in an amount to be proven at trial, including damages for premiums paid, mental anguish, and loss of insurance (valued at $150,000) as Plaintiff cannot obtain comparable replacement insurance due to increased age and declining health; costs; pre- and post-judgment interest at the maximum rate allowed by law; attorney's fees; punitive damages; disgorgement; and such other legal and equitable relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated:   November 8, 2018

/s/   J. Matthew Stephens
 J. Matthew Stephens
Florida Bar No. 0688649
**METHVIN, TERRELL, YANCEY,**
   **STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:    205-939-0199
Facsimile:     205-939-0399
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2018, I filed the foregoing using the Court's CM/ECF service, which caused counsel of record to be served electronically.

        /s/   J. Matthew Stephens
*Attorney for Plaintiff Leslie P. Cutler*

## SERVICE LIST

Clark C. Johnson
Email: cjohnson@kaplanjohnsonlaw.com
Michael T. Leigh
Email: mleigh@kaplanjohnsonlaw.com
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street
Louisville, Kentucky 40202
Telephone:    (502) 416-1630
Facsimile:    (502) 540-8282

*Co-Counsel for Defendants Voya Financial, Inc. & ReliaStar Life Insurance Company*

Jeffrey T. Foreman
Email: jtf@knpa.com
KENNY NACHWALTER, P.A.
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 373-1000
Facsimile:    (305) 372-1861

*Co-Counsel for Defendants Voya Financial, Inc. & ReliaStar Life Insurance Company*